UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00118-GNS

OAKLAWN JOCKEY CLUB, INC., et al.                                         PLAINTIFFS

v.

KENTUCKY DOWNS, LLC
ENCORE GAMING, LLC                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction (DN 28) and Defendants' Joint Motion to Dismiss for Failure to State a Claim (DN 30). The motions have been fully briefed and are ripe for decision. For the reasons stated below, the Motion to Dismiss (DN 30) is **GRANTED**, and the Motion for Preliminary Injunction (DN 28) is **DENIED AS MOOT**.[1]

### I.   BACKGROUND

Plaintiffs own horse racing tracks and trademark rights associated with those tracks. (Am. Compl. ¶ 23, DN 20). The claims in this case relate to use of Plaintiffs' marks by Defendant Encore Gaming, LLC ("Encore") in conjunction with Encore's pari-mutuel gambling system featured at a track owned by Defendant Kentucky Downs, LLC ("Kentucky Downs"). (Am. Compl. ¶¶ 24-54). Encore's system presents a form of gambling called "historical horse

---

[1] Pursuant to LR 7.1(f), Plaintiffs have also filed the Motion for Hearing (DN 29). Because the Court determines that it is unnecessary to hold a hearing to address the pending motions, the Motion for Hearing is **DENIED**.

racing,"[2] which displays a digitized enactment of an historical race on a video monitor after a wager is placed and identifies when and where the race occurred. (Defs.' Resp. to Mot. for Prelim. Inj. 4, 11, DN 35). While displaying the animated race, the video screen identifies the race track where the race was conducted, variously including the names of Plaintiffs' tracks and Plaintiffs' wordmarks. (Defs.' Resp. to Mot. for Prelim. Inj. 4). For example, the system may display "Location: Churchill Downs" followed by the date and other information identifying the past race. All identifying information is displayed in plain white lettering at the bottom of the screen. (Defs.' Resp. to Mot. for Prelim. Inj. 4).

In the Motion for Preliminary Injunction, Plaintiffs seek to enjoin Defendants' usage of Plaintiffs' trademarks. (Pls.' Mem. in Supp. of Mot. for Prelim. Inj. 1, DN 28-2). In the Motion to Dismiss, Defendants seek to dismiss all claims asserted in the Amended Complaint. (Defs.' Mot. to Dismiss 2, DN 30).

## II. JURISDICTION

The Court has subject matter jurisdiction over this pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a)-(b), and supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a).

## III. DISCUSSION

### A. Trademark Infringement Claims

Plaintiffs claim that Defendants are infringing upon their trademarks and seek immediate injunctive relief to protect them from imminent harm. *See IP, LLC v. Interstate Vape, Inc.*, No.

---

[2] Under Kentucky Horse Racing Commission regulations, historical horse racing is defined as "any horse race that: (a) [w]as previously run at a licensed pari-mutuel facility located in the United States; (b) [c]oncluded with official results; and (c) [c]oncluded without scratches, disqualifications, or dead-heat finishes." 810 KAR 1:001 § 1(30).

1:14-CV-00133-JHM, 2014 WL 5791353, at *2 (W.D. Ky. Nov. 6, 2014) ("A preliminary injunction is an extraordinary remedy that is generally used to preserve the status quo between the parties pending a final determination of the merits of the action."). Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted regarding Plaintiffs' trademark infringement claims. (Defs.' Mem. in Supp. of Mot. to Dismiss 7, DN 30-1 [hereinafter Defs.' Mot.]).

In order to survive dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Id*. (internal quotation marks omitted) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

A trademark is "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To assert a claim for trademark infringement, Plaintiffs must allege that: (1) they own the

registered trademark; (2) Defendants used the mark in commerce; and (3) the use was likely to cause confusion. *See* 15 U.S.C. § 1114(1). Only the likelihood of confusion is at issue in this case.

### 1. *The Likelihood Of Confusion*

Plaintiffs claim trademark infringement under the Lanham Act and under Kentucky common law, which both employ the same "likelihood of confusion" test.[3] *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) (employing the "likelihood of confusion" standard to a federal trademark infringement claim); *Colston Invs. Co v. Home Supply Co.*, 74 S.W.3d 759, 764 (Ky. App. 2001) (stating the "likelihood of confusion" is the barometer for trademark infringement). The elements turn on "whether the Defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Big Daddy's*, 109 F.3d at 280.

The Sixth Circuit has held that likelihood of confusion depends on eight factors:

> (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines.

*Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) (citing *Big Daddy's*, 109 F.3d at 280). These factors are not equally weighted, but are used as a guide in determining whether "relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). This eight-factor test does not apply, however, where a

---

[3] Plaintiffs also assert an unfair competition claim under 15 U.S.C. § 1125(a), which likewise requires a showing of likelihood of confusion. *See Champions Golf Club v. The Champions Golf Club*, 78 F.3d 1111, 1123 (6th Cir. 1996) (holding that "[a]s in an action alleging infringement of a mark, likelihood of confusion is the essence of an unfair competition claim").

4

defendant uses the mark in a "non-trademark way." *See Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) (citing *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992)); *Hensley Mfg.*, 579 F.3d at 610. Specifically, there can be no finding of trademark infringement where the alleged offending party is not "using the challenged mark in a way that identifies the source of their goods." *Interactive*, 326 F.3d at 695. In this regard, an important distinction exists between a mark used to identify the source of a good versus a use that is merely descriptive. *See Interactive*, 326 F.3d at 695; *New Kids*, 971 F.2d at 307.

A good example of the non-trademark use of a mark is presented in *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42, 46 (1st Cir. 1991). There, the Boston Athletic Association ("BAA") sued seeking to enjoin the local television station from displaying the words "Boston Marathon" as part of the station's coverage of the annual Patriot's Day marathon. *See id.* at 44. The BAA asserted that it had trademark rights in the mark BOSTON MARATHON and alleged that the station's use of the mark infringed upon BAA's trademark rights. *See id.* In reviewing the trial court's decision refusing to grant injunctive relief, the Fourth Circuit affirmed, holding that there was no infringement and that the station was not required to have a license from the BAA to broadcast coverage of the event. *See id.* at 46-47. In concluding that there was no likelihood of confusion to support the infringement claim, the court noted:

> [T]he record provides us with an excellent reason for thinking that Channel 5's use of the words "Boston Marathon" would *not* confuse the typical Channel 5 viewer. That reason consists of the fact that those words do more than call attention to Channel 5's program; they also *describe* the event that Channel 5 will broadcast. Common sense suggests (consistent with the record here) that a viewer who sees those words flash upon the screen will believe simply that Channel 5 will show, or is showing, or has shown, the marathon, not that Channel 5 has some special approval from the BAA to do so. In technical trademark jargon, the use of words for descriptive purposes is called a "fair use," and the law usually permits it even if the words themselves also constitute a trademark. If, for

> example, a t-shirt maker placed the words "Pure Cotton" (instead of the words "Boston Marathon") on his t-shirts merely to describe the material from which the shirts were made, not even a shirt maker who had a registered trademark called "Pure Cotton" could likely enjoin their sale. As Justice Holmes pointed out many years ago, "[w]hen the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth."

*Id.* at 46 (internal citations omitted) (quoting *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)).

In order to survive a motion to dismiss, Plaintiffs must establish Defendants' use of their marks is likely to cause confusion regarding the source of the pari-mutuel wagering experience Defendants present. *See Hensley Mfg.*, 579 F.3d at 610. Here, the Complaint fails to plausibly establish the Defendants' use of Plaintiffs' marks is anything but a non-trademark use. The video terminal utilized by the customer is physically located at Kentucky Downs' track in Franklin, Kentucky, so that it is inconceivable that the customer may be confused regarding the site of his gambling activity. As Plaintiffs specifically incorporate into their Amended Complaint, Defendants' typical usage of Plaintiffs' marks is depicted as follows:



(Am. Compl. Ex. G, at 7-8, DN 20-7). This image reflects use of the mark to identify the location of the historical race along with the date and race number. Defendants' use of the marks is more akin to race results appearing in the sports section of the newspaper rather than any purported sponsorship or association from Plaintiffs. Particularly striking is the fact the trademark follows the descriptive term "Location" and is used amongst other descriptions of

"Date" and "Race Number." (Defs.' Mot. 9). In addition, the "race" presentation is animated and does not feature any actual images of Plaintiffs' tracks. Further, the bettor cannot be enticed by confusion regarding the source of the "goods"—i.e., the location of the race—because this information is intentionally withheld until *after* the bet is placed. (Defs.' Mot. 11). Indeed, it is central to historical racing that the gambler *cannot* identify the race in advance. Otherwise, all bets would be winners.

Defendants' use of the marks likewise does nothing to suggest any form of sponsorship or partnership between Encore and Plaintiffs' horse tracks. No logo or stylized representation of the marks is depicted in any manner. Defendants are fully within their rights to describe where an event took place in their wagering system without implying the owners of the racetrack are sponsoring the game. Presenting the name of Plaintiffs' tracks in plain words as the location of a race does not constitute trademark infringement. *See World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002) ("Disney concedes, as it must, that plaintiff has the right to describe Disneyland's location on a map with the word 'Disneyland' in a plain printed or typed form.").

Defendants' use of Plaintiffs' marks is a non-trademark use which renders the eight factor test inapplicable in this case. *See Interactive*, 326 F.3d at 695. As the Sixth Circuit has stated, these ordered considerations must yield to the "[t]he ultimate question [which is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp.*, 931 F.2d at 1107. Because Defendants' use of Plaintiffs' marks is in a non-trademark manner, there is no likelihood of confusion required to support Plaintiffs' trademark infringement claim.

### 2. *Fair Use*

Even if Plaintiffs established Defendants' use of their marks was in fact a trademark use and was likely to cause confusion, their claim still fails because Defendants are protected under the affirmative defense of fair use. The fair use doctrine establishes a defense against infringement when:

> [T]he use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their *geographic origin* . . . .

15 U.S.C. § 1115(b)(4) (emphasis added). *See also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-22, 125 (2004); *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006). The Supreme Court has stated "some degree of confusion" is permitted alongside the fair use defense. *KP Permanent*, 543 U.S. at 123. "In evaluating a defendant's fair use defense, a court must consider whether [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) (citation omitted) (applying the test to the artistic use of Tiger Woods' image). The Sixth Circuit has extended the fair use defense to trade names. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014) (applying the two-part fair use test in dispute over energy drink trademarks). Under the doctrine of fair use, "the holder of a trademark cannot prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 319 (6th Cir. 2001).

The plain language of 15 U.S.C. § 1115(b)(4) allows a fair use for trademarks which describe "the geographic origin" of Defendants' product—i.e., where the depicted historical race

was run. *See* 15 U.S.C. § 1115(b)(4). The statute's geographic-origin protection stands for the unremarkable proposition that defendants may state where the subject racing events occurred without committing trademark infringement. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512-13, 521 (6th Cir. 2007) (use of the name of a region of France did not infringe on the mark of a competing winery); *Chrysler Grp. LLC v. Moda Grp. LLC*, 796 F. Supp. 2d 866, 870 (E.D. Mich. 2011) (use of the phrase "imported from Detroit" did not constitute trademark infringement).

Defendants are free to use Plaintiffs' marks in a descriptive sense as Encore's game is currently conducted. *Herman Miller*, 270 F.3d at 319. As discussed above, Defendants' only use of Plaintiffs' marks fits within an innately descriptive template identifying the geographic origin of the historical races utilized in Defendants' wagering system. Any doubt regarding the descriptive use of Plaintiffs' marks is erased, for instance, by use of the word "Location" in conjunction with a colon, followed by "Churchill Downs." (Defs.' Mot. 9). This clearly indicates the location of the event rather than portraying any association between Churchill Downs and Defendants' product.[4]

Plaintiffs assert that using the names of their tracks is not a descriptive term and argue for a narrow definition of geographic origin under 15 U.S.C. § 1115(b)(4). (Pls.' Reply to Mot. for Prelim. Inj. 7-8, DN 38). Plaintiffs' reading is too restrictive. Plaintiffs suggest if Defendants seek to convey a race occurred at Churchill Downs, they could simply state the race happened in Louisville, Kentucky. (Pls.' Reply to Mot. for Prelim. Inj. 7-8). Courts have uniformly rejected "almost as good" alternatives regarding descriptive use. *See Parks*, 329 F.3d at 451; *New Kids*,

---

[4] The APA style guide notes a word or sentence that follows a colon is one that "illustrates, extends, or amplifies the preceding thought." AMERICAN PSYCHOLOGICAL ASSOCIATION, *What are the correct ways to use a colon?*, http://www.apastyle.org/learn/faqs/colon-use.aspx (last visited Jan. 15, 2016).

971 F.2d at 307. The Sixth Circuit exemplified this problem with a quote from Mark Twain: "[t]he difference between the almost-right word and the right word is really a large matter—it's the difference between the 'lightning-bug' and the 'lightning.'" *Parks*, 329 F.3d at 451 (citations omitted). The Sixth Circuit and other jurisdictions have rejected the notion that trademarks cannot be used descriptively simply because another phrase or word may suffice. *See Parks v. LaFace Records*, 329 F.3d 437, 451 (6th Cir. 2003); *New Kids*, 971 F.2d at 307.

Defendants are protected by the fair use defense when describing where an event took place, even when the location described is most commonly conveyed using a registered trademark. *See World Impressions*, 235 F. Supp. 2d at 843. A significantly different situation would exist if Defendants used Plaintiffs' logos and fonts to convey this same geographic information. In such an instance, Defendants would be using more of the Plaintiffs' marks than necessary to convey the specific geographic location which could imply some association between Plaintiffs and Encore's product. This is simply not the case here. Defendants have used Plaintiffs' marks in a purely descriptive sense instead of any stylized depiction of the marks. Therefore, Defendants satisfy the first element of the fair use doctrine.

Plaintiffs contend Defendants use of their marks alone constitutes bad faith because Defendants had knowledge the marks were protected. (Pls.' Resp. to Mot. to Dismiss 13, DN 36 [hereinafter Pls.' Resp.]). In light of Kentucky's pari-mutuel wagering regulations requiring identification of historical races, however, Defendants' use of Plaintiffs' marks in this context cannot constitute bad faith. Specifically, 810 KAR 1:011 § 3(7)(f) provides with respect to historical races:

> After a patron finalizes his or her wager selections, the terminal shall display a video replay of the race, or a portion thereof, and the official results of the race. **The identity of the race shall be revealed** to the patron after the patron has placed his or her wager

10

810 KAR 1:011 § 3(7)(f) (emphasis added). Identifying the race would seem to necessitate providing the track name, date, and race number of the event. This information is mandated by the regulatory requirement, which negates the element of bad faith.

Likewise, Defendants' knowledge of Plaintiffs' trademark rights alone is not sufficient to establish bad faith. As the Second Circuit has noted:

> It is a fundamental principle marking an outer boundary of the trademark monopoly that, although trademark rights may be acquired in a word or image with descriptive qualities, the acquisition of such rights will not prevent others from using the word or image in good faith in its descriptive sense, and not as a trademark. The principle is of great importance because it protects the right of society at large to use words or images in their primary descriptive sense, as against the claims of a trademark owner to exclusivity. This common-law principle is codified in the Lanham Act, which provides that fair use is established where "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of . . . [a] party, or their geographic origin."

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995) (internal citations omitted) (quoting 15 U.S.C. § 1115(b)(4)). *See also Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427-28 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009) (granting summary judgment for the defendant on the defense of fair use because neither failing to conduct a trademark search nor ignoring a cease and desist letter constitutes bad faith).

Therefore, even if Plaintiffs could establish a likelihood of confusion, the Defendants have satisfied the affirmative defense of fair use, which warrants the dismissal of the claims. *See Hensley Mfg.*, 579 F.3d at 612 (affirming the dismissal of trademark infringement claims under Rule 12(b)(6) because of the fair use defense).

        **3.**    *Unfair Competition*

As noted above, a claim of unfair competition under 15 U.S.C. § 1125(a) is also governed by the "likelihood of confusion" test. *See Daddy's Junky Music*, 109 F.3d at 288; *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604-05 (6th Cir. 1991); *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647-49 (6th Cir. 1982). Having already determined that Defendants' use of Plaintiffs' marks does not create confusion and, regardless, is protected by the affirmative defense of fair use, Plaintiffs' unfair competition claims are likewise dismissed.

        **4.**    *Timeliness of Dismissal*

Plaintiffs further argue that this matter should not be decided at the motion to dismiss stage, citing cite case law outside of the jurisdiction indicating that "distinctiveness" is a question of fact which should be decided by a jury. (Pls.' Resp. 7, 12). The question of distinctiveness, however, is not a basis of Court's ruling. Instead, this case turns on the lack of confusion in the use of Plaintiffs' marks and the affirmative defense of fair use. *See Hensley Mfg.*, 579 F.3d at 610 (affirming dismissal where exhibits and facts alleged in the complaint "demonstrated that there was no likelihood of confusion and that the fair use defense conclusively applied as a matter of law.").

Here, Plaintiffs have failed to allege plausible facts which would justify this matter proceeding beyond this motion to dismiss. The Court sees no benefit to either party in allowing further litigation in this matter. Instead, dismissal is appropriate at the point of "minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation marks omitted) (citation omitted). Therefore, the Court grants Defendants' motion and dismisses Plaintiffs' claims in their entirety.

### D.     Preliminary Injunction

In light of the Court's disposition of the motion to dismiss, the motion for preliminary injunction is now moot and will be denied. *See Great Lakes Consortium v. Michigan*, 480 F. Supp. 2d 977, 986 n.4 (W.D. Mich. 2007).

### IV.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Motion to Dismiss filed by Defendants Encore Gaming, LLC and Kentucky Downs, LLC (DN 30) is **GRANTED** and Plaintiffs' Motion for Preliminary Injunction (DN 28) is **DENIED AS MOOT**.

                                                         **Greg N. Stivers, Judge**
                                                         **United States District Court**
                                                                 April 18, 2016

cc:     counsel of record